In re **GRAND JURY INVESTIGATION.**

No. 99–671.

United States District Court,
D. Oregon.

Sept. 15, 2000.

Bryan E Lessley, Asst. Federal Defender, Eugene, OR, Frank Papagni, U.S. Attorney's Office, Eugene, OR.

## ORDER

COFFIN, United States Magistrate
Judge.

## BACKGROUND

The government, and thus the grand
jury, is investigating whether JOHN DOE
(the target's pseudonym) committed fraud
in connection with his application for VA
disability compensation benefits. Doe rep-
resented he suffered from Post Traumatic
Stress Syndrome Disorder (PTSD) from
his combat service in Vietnam. The gov-
ernment contends that Doe falsified the
details of his military experiences to cer-
tain psychotherapists, leading to erroneous
diagnoses that were disclosed to and con-
sidered by VA officials, resulting in the
award of benefits.

The question before the court is whether
Doe's psychotherapists can be compelled
to testify before the grand jury notwith-
standing Doe's assertion of the psycho-
therapist-patient privilege. *Jaffee v. Red-
mond,* 518 U.S. 1, 116 S.Ct. 1923, 135
L.Ed.2d 337 (1996). For reasons that I
will set forth more fully below, I find that
Doe has waived the privilege with respect
to two of the psychotherapists at issue, and
that it did not exist with respect to the
third. Accordingly, the government's mo-
tion to compel is well-taken and is granted.

### 1. Dr. Emmett Early

■ Doe was court-martialed in the ear-
ly 1980's on various fraud charges. His
defense team had him evaluated by Dr.
Early, a clinical psychologist, who diag-
nosed Doe as having PTSD. This diagnosis
was used by Doe in his defense, resulting
in a mitigation of his sentence and place-
ment in a PTSD treatment program. Dr.
Early's diagnosis was based largely on
Doe's self-reporting of traumatic events,
such as recounting the death of a medical
corpsman, being trapped in a bunker with
deceased comrades for three days, and
witnessing the death of his brother in Viet-
nam. Although the government offers evi-
dence that none of these events occurred
as described by Doe, such is irrelevant to

my analysis because I need not address
the crime-fraud exception to the psycho-
therapist privilege advocated by the gov-
ernment in view of Doe's clear waiver of
the privilege with respect to his communi-
cations with Dr. Early.

First, Doe offered Dr. Early's diagnosis
and opinion on his own behalf in connec-
tion with the court-martial proceedings.
Although Doe now argues that his waiver
was not voluntary because it was made in
the coercive context of a criminal proceed-
ing, no caselaw is cited for such a remark-
able proposition; carried to its logical end,
such a construct would presumably negate
every waiver of the privilege against self-
incrimination by every defendant who tes-
tifies on his own behalf at trial.

Having waived the privilege by using
Dr. Early's diagnosis at the court-martial,
Doe cannot now go back and slam the
door. When confidential communications
and/or the diagnosis based thereon become
disclosed at the privilege-holder's request,
the basis for the privilege departs and
cannot be recaptured. Having opened his
communications with Dr. Early to a public
forum, how can Doe possibly argue that
they remain "confidences"? Although I
have tried to resist the temptation of clich-
es, I succumb to two that leap readily to
mind: the image of putting the genie back
in the bottle, and the impossibility of un-
ringing the bell.

■ Beyond the court martial proceed-
ings, Doe expressly waived the privilege
with respect to Dr. Early when he formal-
ly applied for disability benefits in 1985,
listed Dr. Early on the form as having
diagnosed him with PTSD, and executed a
formal waiver which, in part, provides:

> "I consent that any physician, surgeon,
> dentist or hospital that has treated or
> examined me for any purpose, or that I
> have consulted professionally, may fur-
> nish the Veterans Administration any
> information about myself, and I waive
> any privilege which renders such infor-
> mation confidential."

Doe contends that this waiver in connection with his disability application is not really a waiver of the privilege, likening the VA to a hospital which maintains records generated by a patient's treating physician but is not free to release them to the public.

The argument is misplaced; Doe was not agreeing to release records to the VA for the purpose of obtaining medical care or suitable treatment for his condition. He was submitting the records in support of his claim for monetary benefits. This is no different than submitting medical records to a tortfeasor's insurance carrier in connection with a demand for damages associated with bodily injuries caused by an automobile accident. The carrier is entitled to thoroughly review the claim, and if it suspects "Whiplash Willy" fakery, to turn the records over to the police for a fraud investigation. Doe cannot selectively use his treating psychotherapist's records to pursue monetary benefits, and then invoke the privilege to bar a thorough investigation into the accuracy of the diagnosis at issue and the truth or falsity of the representations that led to the diagnosis.

## 2. Dr. Bennett Wight

Doe treated with Dr. Wight, a neuropsychiatrist, in 1991 and 1992. On January 10, 1993, Doe executed a formal release authorizing Dr. Wight to disclose any and all records pertaining to his treatment to the VA. Again, these records were being submitted in connection with Doe's claim for increased benefits. For the same reasons as set forth above, I find that this was a voluntary waiver of the psychotherapist-patient privilege regarding any communications between Doe and Dr. Wight, and any records pertaining thereto.[1] Doe may not selectively invoke the privilege to bar a full investigation of his benefits claim.

---

1. Doe contends that this waiver was valid for only 90 days, because a clause in the release specified that "(t)his request is valid for ninety (90) days ..." This argument is a semantical contortion of the provision, which, read in context, essentially requests the physician (Dr.

## 3. Dr. Brian Liebreich

■ Dr. Liebreich evaluated Doe for purposes of a VA rating in connection with Doe's application for an increase in his disability benefits in 1993. The examination was not for purposes of treatment, but for diagnosis with the express understanding that Dr. Liebreich's findings were to be submitted to the VA for consideration regarding Doe's disability compensation benefits.

It is doubtful that the psychotherapist-patient privilege ever attached to the communications between Doe and Dr. Liebreich, because those communications were made with full knowledge that they would be disclosed to the VA. To quote from *Jaffee, supra,*

> Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Jaffee v. Redmond,* 518 U.S. at 10, 116 S.Ct. 1923.

Where the basis for the privilege never existed in the first place—i.e., where disclosure between patient and psychotherapist was for the purpose of a rating for VA

---

Wight) to furnish records to the VA within that time period. It has no limiting effect on the VA's use of the records, nor can it be fairly construed as a waiver of the privilege by Doe for only 90 days.

benefits—there was no expectation of confidentiality and hence no creation of the privilege.[2]

In addition, the form executed by Doe put him on notice that any statement made to Dr. Liebreich might well be disclosed to law enforcement and/or a grand jury, as it contained this warning directly below his signature:

> PENALTY: The law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false.

---

**2.** That is not to say there were no contours of privacy arising from Dr. Liebreich's evaluation. The VA form executed by Doe in connection with this examination provides that the information will not be disclosed outside the agency except in conformity with the Privacy Act and applicable VA regulations, which provide that "pertinent information may be disclosed to appropriate Federal, State or local agencies responsible for investigating, prosecuting, enforcing or implementing statutes, rules, regulations or orders, where VA becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation." 64 FR 23900–01.